# UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | | |
|---|---|---|
| JAMES HOWELL et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Docket No. 2:16-cv-438-NT |
| | ) | |
| ADVANTAGE PAYROLL SERVICES, INC. et al., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| PRECISION PAYROLL SERVICES, INC., | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Docket No. 2:16-cv-439-NT |
| v. | ) | |
| | ) | |
| ADVANTAGE PAYROLL SERVICES, INC., | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER ON DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Before me is Defendant Advantage Payroll Services, Inc.'s ("**Advantage**") motion for partial summary judgment on four counts. (ECF No. 43, Docket No. 16-cv-438). Advantage requests summary judgment on Count One of the Amended Complaint filed by Plaintiffs James Howell ("**Howell**"), Ronald Rode ("**Rode**"), Chase, Mozzicato, Patz, Inc. ("**CMP**"), and Payroll, Etc., Ltd. ("**Payroll**"), all of whom are Advantage franchisees. Amended Complaint (ECF No. 42, Docket No. 16-cv-438). Advantage also requests summary judgment on Count One of the separate, but

related Complaint filed by Plaintiff Precision Payroll Services, Inc. ("**Precision**"), a fifth Advantage franchisee. Complaint (ECF No. 1, Docket No. 16-cv-439). These two counts are nearly identical requests for declaratory judgment that the Plaintiffs (collectively, "**the Associates**") have contractual rights to renew their franchise agreements and that Associates' recent attempts to renew are valid. Advantage finally seeks summary judgment on Count One of its counterclaims in both cases, requesting declaratory judgment that the Associates do not have a right to renew their franchise agreements and that attempts to renew are invalid. Answer and Counterclaims (ECF No. 32, Docket No. 16-cv-438; ECF No. 6, Docket No. 16-cv-439).

For the following reasons, the motion is **GRANTED**.

## LEGAL STANDARD

Summary judgment is appropriate when there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). A fact is material where it could influence the outcome of the litigation. *Oahn Nguyen Chung v. StudentCity.com, Inc.*, 854 F.3d 97, 101 (1st Cir. 2017). A dispute is genuine where a reasonable jury could resolve the point in favor of the non-moving party. *Id.* In deciding a motion for summary judgment, the court must construe "all the facts in the light most flattering to the nonmoving party, resolving any evidentiary conflicts in that party's favor, and drawing all reasonable

inferences therefrom to his behoof." *Id.* (quoting *Gomez v. Stop & Shop Supermkt. Co.*, 670 F.3d 395, 396 (1st Cir. 2012)).

## BACKGROUND

Between 1986 and 1997, each of the Associates entered into substantially identical contracts with Advantage to operate an Advantage franchise (the "**license agreements**"). JSMF ¶ 63. These license agreements granted the Associates a ten-year term, with an option to renew the license agreement for one additional ten-year term.[1] JSMF ¶¶ 3 (Howell), 9 (CMP), 14 (Payroll), 25 (Rode), 29 (Precision). The License Agreements provide, in relevant part:

II. Term and Renewal

    A.  Except as otherwise provided herein, the term of this Agreement shall expire ten (10) years from the date of execution of the License Agreement.

---

[1]     There are a few substantive, but ultimately immaterial, variations in the license agreements. First, Payroll entered into agreements for two franchises, the Midland Agreement in 1986 and the Lubbock Agreement in 1998. JSMF ¶¶ 13, 18. The 1998 Payroll Lubbock Agreement granted an initial *eight-year* term, with an option to renew for a ten-year term. JSMF ¶¶ 19-20. (Payroll does not seek to renew the Lubbock Agreement. JSMF ¶ 48.)

    Second, Rode entered into a renewal license agreement (as opposed to a renewal addendum, discussed *infra*) in June 1999, approximately 9 months after his initial license agreement expired. JSMF ¶ 24. The renewal license agreement was consistent with the license agreement in all material respects; in particular, it authorized Rode to operate a franchise for ten years, and it granted an express option to renew for one additional ten-year term. JSMF ¶¶ 24-25, 134.

    Third, Howell's 1994 license agreement included an addendum granting him a second option to renew for an additional ten-year term "provided that no more than 50% of the outstanding shares in the Company are acquired by new owners. JSMF ¶ 4. Paychex's purchase of Advantage in 2002 nullified Howell's second renewal option. JSMF ¶ 4.

    Finally, later agreements entered into by CMP and Precision in 1997, Payroll in 1998, and Rode in 1999 reflect minor stylistic changes. *Compare* Payroll-Midland License Agreement (ECF No. 45-5); Rode Initial License Agreement (ECF No. 45-9); Howell License Agreement (ECF No. 45-1) *with* CMP License Agreement (ECF No. 45-3); Payroll-Lubbock Agreement (ECF No. 45-7); Rode Renewal License Agreement (ECF No. 45-10); Precision License Agreement (ECF No. 45-12).

> B. Associate may, at its option, renew this Agreement for one (1) additional term of ten (10) years . . .
>
> > 1. Associate shall give Company written notice of Associate's election to renew not less than six (6) months nor more than twelve (12) months prior to the end of the initial term;
> >
> > . . . .
> >
> > 5. Associate shall execute Company's then-current form of renewal license agreement, which agreement shall supersede this Agreement in all respects, and the terms of which may differ from the terms of this Agreement, including, without limitation, a higher fee for company services . . .

*See, e.g.,* Payroll-Midland License Agreement (ECF No. 45-5).

Each of the Associates exercised its option and entered into substantially identical renewal addenda to extend their contracts for an additional ten-year term. JSMF ¶ 63. Each renewal addenda was a one-page document that consisted of four numbered paragraphs. JSMF ¶ 68. In relevant part, each renewal addenda referenced the original license agreement and then stated:

> 1. . . . Effective as of 12:01 A.M. on [expiration date of current term] the term of the License Agreement shall be renewed for a period of ten (10) years and shall expire on [date ten years from expiration of current term].
>
> . . . .
>
> 3. Licensee acknowledges that it has not received, and is not relying on any promise, representation or warranty, express or implied, outside the express terms of this Addendum.
>
> 4. This Addendum constitutes an integral part of the License Agreement between the parties hereto, and the terms of this Addendum shall be controlling with respect to inconsistent provisions and the subject matter hereof. Except as modified or supplemented by this Addendum, the terms of the License Agreement are hereby ratified and confirmed.

JSMF ¶ 68; Defs.' Ex. B, D, F, H, K, M (ECF Nos. 45-2, 45-4, 45-6, 45-8, 45-11, 45-13). Paragraph two, omitted from the above quotation, provided a general release. JSMF ¶ 69.

As the renewal terms have expired or neared expiration, the Associates have sought to renew the license agreements for additional ten-year terms. JSMF ¶¶ 33, 41, 47, 59. Advantage, however, has stated that the Associates have no contractual right to renew, and Advantage would not grant further renewals.[2] JSMF ¶¶ 34, 42, 49, 60.

## DISCUSSION

The question before me is whether each of the Associates has a contractual right to renew the license agreement upon the expiration of the renewal addendum. Under Maine law,[3] the analysis depends on the nature of the contract: interpretation of an unambiguous contract is a question of law and interpretation of an ambiguous contract is a question of fact. *Tate & Lyle Ingredients Americas, Inc. v. Transp. Distribution, LLC*, 746 F. Supp. 2d 189, 195 (D. Me. 2010).

A contract is ambiguous where its terms allow for more than one reasonable interpretation. *Blackie v. Maine*, 75 F.3d 716, 721 (1st Cir. 1996). A contract need not "negate every possible construction of its terms in order to be unambiguous," and "a

---

[2]    Advantage has granted shorter term extensions to franchisees during the resolution of this dispute. JSMF ¶¶ 35 (Howell), 50 (Payroll).

[3]    The parties' choice of law provision selects Maine law, and the parties do not dispute this issue. *See Sebascodegan Enters., LLC v. Petland, Inc.*, 647 F. Supp. 2d 71, 74 (D. Me. 2009) (Maine choice of law doctrine generally will enforce a contractual choice of law provision).

contract is not ambiguous merely because a party to it, often with a rearward glance colored by self-interest, disputes an interpretation that is logically compelled." *Id.*; *see also Champagne v. Victory Homes, Inc.*, 897 A.2d 803, 806 (Me. 2012) (quoting *Blackie*, 75 F.3d at 721).

Courts interpret a contract "from the perspective of an ordinary or average person." *Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 34 (1st Cir. 2001); *see also Ackerman v. Yates*, 847 A.2d 418, 422 (Me. 2004) (contract language should be given its "plain meaning"). Courts also prefer an interpretation that "gives effect to all the terms of a contract" over an interpretation that takes provisions out of context. *Blackie*, 75 F.3d at 722; *see also PowerShare, Inc. v. Suntel, Inc*, 597 F.3d 10, 16 (1st Cir. 2010) (applying Massachusetts law).

Finally, in Maine, the parol evidence rule "exclude[s] from judicial consideration extrinsic evidence offered to alter or vary unambiguous contractual language." *Rogers v. Jackson*, 804 A.2d 379, 381 (Me. 2002) (quoting *Astor v. Boulos Co.*, 451 A.2d 903, 905 (Me.1982)).[4]

Advantage argues that the terms of the license agreement and the renewal addenda are unambiguous and do not grant the Associates an additional option to renew. The Associates claim that the renewal addenda unambiguously do grant an additional option to renew—or, if the contract is found ambiguous, that the extrinsic

---

[4]     The Plaintiffs move for leave to supplement the summary judgment record (ECF No. 65, Docket Nos. 16-cv-438, 16-cv-439), and the Defendant does not object. (ECF No. 67, Docket Nos. 16-cv-438, 16-cv-439.) Accordingly, the motion is **GRANTED**. Because, however, the supplement contains extrinsic evidence offered to alter or contradict the unambiguous language of the parties' agreement, I do not consider it in my analysis of the motion for partial summary judgment. *See Rogers v. Jackson*, 804 A.2d 379, 381 (Me. 2002).

evidence strongly indicates an additional renewal right.[5] I agree with Advantage for the following reasons.

First, the license agreement unambiguously created just one option to renew for one, ten-year term. The renewal addenda honored that option, setting an expiration date for ten years after the renewal went into effect. In both the license agreements and renewal addenda, the expiration deadline was clearly expressed with the provision that the term "shall expire" ten years from the agreement date.

Significantly, Section II.A of the initial license agreements qualified the expiration date with the conditional clause "[e]xcept as otherwise provided herein." This condition opened up the possibility for an exception—the renewal option—which Section II.B subsequently outlined. By contrast, the renewal addenda eliminates the conditional language from the "shall expire" clause. This change frees the agreement's expiration from any "except as otherwise provided" condition. On this basis, I reject the Associates' arguments that the "only modification" in the renewal addenda was a reset of the expiration date, and "nothing" extinguished the Associates' options. *See* Pls.' Opp'n 6, 9 (ECF No. 46).

Second, there is no language in the renewal addenda expressly creating an additional renewal option. Courts are instructed not to "imply other and further promises out of thin air" where the terms are reasonably clear. *Triple-A Baseball Club Assocs. v. Ne. Baseball, Inc.*, 832 F.2d 214, 221 (1st Cir. 1987). Here, the license

---

[5]     In their opposition to the Defendant's motion for partial summary judgment, the Associates request summary judgment in their favor under Fed. R. Civ. P. 56(f)(1). Pls.' Opp'n 2 (ECF No. 46). To the extent this effectively placed a motion under advisement of this Court, this Order renders it moot.

agreement undisputedly created just one option to renew for one ten-year term, and the renewal addenda set a clear durational deadline. The Associates' interpretation asks me to see an implied renewal option that would substantially alter these express terms.

The Associates' position is particularly dubious in the context of an option, which is not merely a term of the license agreement but itself a binding offer. An option traditionally constitutes a unilateral contract that requires consideration and binds the offeror while granting the offeree a right within a specific period. *See, e.g.,* Corbin on Contracts § 11.8; 11 Williston on Contracts § 5:16; Restatement Second of Contracts § 87. The renewal option found in the license agreements fits this definition. For example, Section II.B.1 stipulated that the specific period for notice of renewal was not more than twelve months and not less than six months before the term expired. Section II.B.5 further provided that exercise of the renewal option would require a new, superseding written agreement and may involve the renegotiation of some of the terms. This context indicates that silence with regard to an additional renewal option does not imply the creation of a new option.

Third, I cannot accept the Associates' argument that the terms "renew" and "renewal" signify the parties' intent to grant the Associates "multiple options to renew for at least '1 additional term.' " Pls.' Opp'n 7.

If I were to find that the renewal addenda impliedly resurrected the one-time option in the license agreement, then the license agreements and renewal addenda would have effectively created an endless renewal right. *See Int'l Union v. ZF Boge*

*Elastmetall LLC*, 649 F.3d 641, 648 (7th Cir. 2011) ("It is reasonable to expect that the parties would have provided explicitly for an unlimited duration for the obligation . . . . It is not a reasonable interpretation of this instrument to view the obligation as continuing."). A one-time renewal that impliedly multiplies ad infinitum is not a reasonable interpretation. *See McLane & McLane v. Prudential Ins. Co. of America*, 735 F.2d 1194, 1196 n.1 (9th Cir. 1984) (collecting cases). For these reasons, I find no facial ambiguity to the meaning of the renewal provision. I therefore find the contract unambiguous on the question of the renewal option.

If an unambiguous contract is an integrated written agreement, the parol evidence rule operates to exclude from consideration extrinsic evidence that would alter its meaning. *Rogers*, 804 A.2d at 381. Here, paragraph three of the renewal addenda states that "[l]icensee acknowledges that it has not received, and is not relying on any promise, representation or warranty, express or implied, outside the express terms of this Addendum." The next paragraph then begins: "[t]his Addendum constitutes an integral part of the License Agreement between the parties hereto." This constitutes an unambiguous integration provision, and the Associates do not dispute the point. *See Greenell Corp. v. Penobscot Air Serv., Ltd.*, No. 99-31-P-C, 1999 WL 33117116, at *5 (D. Me. 1999). The parol evidence rule therefore applies, and my analysis stops with the contractual text.

Where, as here, there is clear durational language in an integrated agreement and the plaintiff provides no reasonable alternative meaning for the term, summary judgment is warranted. *See Coffin v. Bowater Inc.*, 501 F.3d 80, 99 (1st Cir. 2007).

## CONCLUSION

Because I find that there is only one reasonable interpretation of the integrated licensing agreement and renewal addenda with respect to the one-time renewal option, the Court **GRANTS** the Defendant's motion for partial summary judgment.


SO ORDERED.

/s/ Nancy Torresen
United States Chief District Judge

Dated this 11th day of December, 2017.